**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roberta Lynn Bromley, | CIV 16-1658-PHX-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Nancy A. Berryhill, Commissioner of Social Security, | |
| Defendant. | |

Pending before the Court is Plaintiff Roberta Lynn Bromley's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

## I. PROCEDURAL HISTORY

In August 2007, Plaintiff filed an application for disability insurance benefits alleging disability beginning January 20, 2005.[1] Her application was denied initially and on reconsideration. Thereafter, Plaintiff requested a hearing before an administrative law judge. A hearing was held on December 7, 2009, and the ALJ issued a decision on April 10, 2010, finding that Plaintiff was not disabled from the alleged onset date through the date last insured. The Appeals Council denied Plaintiff's request for review, making the ALJ's

---

[1] After subsequent remand, Plaintiff later amended her alleged onset date to August 1, 2006 in her second hearing before the ALJ held on November 14, 2013.

decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) in the United States District Court – District of Arizona.

On April 8, 2013, the district court found that the ALJ erred in failing to discuss Plaintiff's mental impairments in making the RFC determination and failing to set forth clear and convincing reasons for rejecting Plaintiff's subjective complaint testimony. Thus, the court vacated the ALJ's decision and remanded the matter for further administrative proceedings.

The ALJ held a second hearing pursuant to the district court's remand order and issued a decision on March 18, 2014. The ALJ again found Plaintiff not under a disability from August 1, 2006 (the amended alleged onset date) through the date last insured. The record reflects that Plaintiff filed written exceptions to the March 18, 2014 decision and the Appeals Council remanded the matter back to the ALJ for additional proceedings.

A third hearing was held on May 20, 2015, and on July 1, 2015, the ALJ issued a decision finding that Plaintiff was not under a disability at any time from the alleged onset date through the last date insured. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. See id. In determining whether substantial evidence supports a decision, a court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." Id. As a general rule, "[w]here the

evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in this context. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. See id. The claimant usually bears the burden of showing that an error is harmful. See id. at 1111.

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing ... inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

### III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date through the date last insured. (Tr. at 594.) At step two, she found that Plaintiff had the following severe impairments: status post left Achilles tendon transfer, fibromyalgia, and chronic obstructive pulmonary disease. (Tr. at 595-597.) At step three, the ALJ stated that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 597-98.) After consideration of the entire record, the ALJ found that through the date last insured Plaintiff retained the residual functional capacity "to perform light work as defined in 20 CFR 404.1567(b) except claimant could occasionally push or pull with the bilateral upper extremities. Claimant could occasionally operate foot controls with the bilateral lower extremities. Claimant could never climb ladders, ropes or scaffolds, but could occasionally climb ramps or stairs. Claimant could frequently balance, stoop, and kneel. Claimant could occasionally crouch and crawl. Claimant could have no more than occasional exposure to non-weather-related extreme temperatures, such as extreme cold and extreme heat. Claimant should have no more than occasional exposure to pulmonary irritants, such as fumes, odors, dusts and gases. Claimant should have no more than occasional exposure to poorly ventilated areas, dangerous machinery, with moving mechanical parts and unprotected heights."[2] (Tr. at 598-605.) The ALJ found that Plaintiff had no past relevant work, but, considering her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff

_____

[2] "Residual functional capacity" (or "RFC") is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 4 -

could have performed. (Tr. at 605-607.) Thus, the ALJ concluded that Plaintiff has not been under a disability at any time from the alleged onset date through the date last insured. (Tr. at 607.)

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; and (2) failing to properly consider her subjective complaints. Plaintiff requests that the Court remand for determination of benefits.

### A.    Medical Source Opinion Evidence

Plaintiff contends that the ALJ erred by improperly weighing medical opinion evidence. Plaintiff specifically states that the ALJ failed to properly weigh the opinions of her treating physician, Thomas Mertins, M.D., and improperly assigned significant and partial weight to non-treating doctors.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But, the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. See Andrews, 53 F.3d at 1040-41; see also 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. See Lester, 81 F.3d

at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, 'rather than the doctors', are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Since Dr. Mertins' opinions were contradicted by other non-treating physicians, as well as, other objective medical evidence of record, the specific and legitimate standard applies.

The record reflects that Dr. Mertins completed multiple medical physical assessments – each opining that Plaintiff was unable to work. (Tr. at 412-414, 494-495, 520-538, 995-996.) Specifically, Dr. Mertins opined that Plaintiff was unable to work eight hours a day, five days a week on a regular and consistent basis. Plaintiff could lift and carry less than 10 pounds. Plaintiff would be limited in her use of her bilateral hands and feet, and would be limited in her ability to bend, reach, and stoop. Plaintiff would be restricted in her ability to be around moving machinery, be at unprotected heights, or be exposed to changes in temperatures and humidity. Plaintiff would be restricted in her ability to drive automotive equipment and in her ability to be exposed to dust, fumes, and gases. (Tr. at 412-414, 494-495, 520-538, 995-996.)

The ALJ assigned "little weight" to Dr. Mertins' opinions for multiple reasons. First, the ALJ found that Dr. Mertins "merely checked boxes on a form, rather than providing a function-by-function analysis regarding claimant's alleged limitations." The ALJ found Dr. Mertins' opinions vague and imprecise, and determined that he provided no explanation for the "extreme" limitations set forth in his opinions. An ALJ may properly reject the opinion of a treating physician "'if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)). An "ALJ may [also] 'permissibly reject [] ... check-off reports that [do] not contain any explanation of the bases of their conclusions.'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Plaintiff, however, argues that the ALJ erred by discounting medical opinions based on check-box forms when there is ample support from treatment records. The Court agrees. The Ninth Circuit has held that a check-box form is entitled to weight if it is based on the physician's "significant experience" with the plaintiff and "supported by numerous records." Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014). Although Plaintiff fails to cite any records supporting Dr. Mertins' conclusory opinions in this section of her brief, there is sufficient support in the record establishing Dr. Mertins' "significant experience" with Plaintiff and containing "numerous" pages of treatment notes from Dr. Mertins to support his opinions.

Second, the ALJ found that Dr. Mertins' opinions were not supported by his own clinical findings. The ALJ gave an example stating, "Dr. Mertins' treatment records noted claimant had right shoulder tendinitis. It also showed that while physical examination revealed tenderness to palpation across the supraspinatus tendons, there was no obvious, ligament laxity or evidence of rotator cuff tear, and no other focal findings. The assessment noted that in light of the negative x-ray, physical therapy would be recommended. (38F/3, 6; 33F) Yet, Dr. Mertins' limits claimant's ability to reach to occasionally." Again, an ALJ may only reject a treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998). "The ALJ must do

more than offer his conclusions. He must set forth his own interpretations and explain why they, 'rather than the doctors', are correct." Id. (citing Embrey, 849 F.2d at 421-22). Here, the ALJ concluded that Dr. Mertins' opinions were not supported by his own findings. The ALJ supported this conclusion by citing one example that the Court fails to find inconsistent. The ALJ erred by not identifying specific conflicting clinical evidence, and failed to explain why her interpretations, rather than Dr. Mertins', were correct. The ALJ's conclusory statement is insufficient. See Reddick, 157 F.3d at 725.

Third, the ALJ found that Dr. Mertins' opinions were inconsistent with Plaintiff's activities of daily living. The ALJ gave another example stating, "Dr. Mertins opined claimant had a total restriction in her ability to be around fumes and pulmonary irritants, yet the claimant was still smoking at the time he wrote the opinion." The Court finds that the ALJ's single example without providing context of the alleged inconsistency fails. Again, the ALJ did not identify specific statements made by Plaintiff regarding her activities of daily living that were inconsistent with Dr. Mertins' opinions. Nor did she explain why her interpretations, rather than Dr. Mertins', were correct. The ALJ's conclusory statement is insufficient. See Reddick, 157 F.3d at 725.

Lastly, the ALJ rejected Dr. Mertins' opinions finding that statements made that a claimant is "disabled", "unable to work", "can or cannot perform a past job", or "meets a Listing", or the like, are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. The ALJ found that "[s]uch issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability (Social Security Ruling 96-5p)." However, the Court's review of Dr. Mertins' opinions fails to reveal administrative findings dispositive of a case. Rather, said opinions consist of medical source statements submitted by a treating source as to an individual's ability to sit, stand, walk, lift, carry, handle, finger, bend, balance, etc., and are entitled to special significance.

In sum, the Court finds that the ALJ erred by improperly weighing the opinions of Plaintiff's treating physician, Thomas Mertins, M.D. The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting said opinions.

**B.    Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-

39.[3] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

Plaintiff testified that she could not work between August 1, 2006 and December 31, 2009, due to back pain, muscle pain, neck pain, tension headaches, panic attacks and status post-surgery on her left Achilles tendon. Her impairments became increasingly more painful. She received initial pain relief of one week following left foot surgery. Her conditions have continued to be the same as they were in 2006. She quit smoking in 2011. She could sit for 15 minutes, stand for 15 to 20 minutes, could lift approximately ten pounds and would need to alternate positions. She did not believe formal mental health counseling helped her. (Tr. at 618-33, 644-58, 791-807.)

Although the ALJ recognized that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, she also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. (Tr. at 598-602.)

## 1. Objective Medical Evidence

The ALJ first determined that Plaintiff's allegations regarding the severity of her physical symptoms and limitations were not supported by the objective medical findings of record. While an ALJ may reject a Plaintiff's testimony about the severity of her symptoms, he must "point to specific facts in the record which demonstrate that [the claimant] is in less

---

[3] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

pain than she claims." <u>Vasquez v. Astrue</u>, 572 F.3d 586, 592 (9th Cir. 2009). And, as the Ninth Circuit has made clear, if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991).

The ALJ discussed the medical evidence in the administrative record with regards to Plaintiff's complaints related to her ankle, back, knee, Chronic Obstructive Pulmonary Disease (COPD), and fibromyalgia. As to Plaintiff's ankle the ALJ found that treatment records noted minimal findings stating that bilateral ankle x-rays were unremarkable with no degenerative changes, no osteolysis, no fracture, and no dislocation. Citing specifically to exhibits in the record, the ALJ stated that Plaintiff's condition showed improvement. The ALJ stated that treatment records also noted Plaintiff reported her mobility was improving, she was feeling better, and her foot use was approximately 70% improved.

Regarding Plaintiff's back complaints, the ALJ noted that treatment records showed tenderness to palpation in her back, but no crepitus. She stated that diagnostic imaging performed in October 2007 was unremarkable. The ALJ referred to an October 2007 physical examination revealing mostly normal results.

As to Plaintiff's knee pain, the ALJ stated that treatment records noted that Plaintiff's knee was doing better. The ALJ noted that recommendations were to continue using muscle relaxers, to add heat, and take it easy.

Regarding Plaintiff's COPD, the ALJ documented her condition citing to various records from Dr. Mertins. The ALJ stated that physical examinations and diagnostic imaging were normal and pulmonary function tests demonstrated non-severe findings. The ALJ found that physical examinations showed Plaintiff's chest was normal with no decreased breath sounds, rales, rhonchi or wheezes; and a chest x-ray taken in April 2006 showed clear lungs and no active disease. On January 10, 2007, a pulmonary function test showed a moderate airway obstruction and diffusion defect that suggested emphysema. The ALJ noted that the

recommendation was conservative treatment, and that the record contained little to no evidence of frequent exacerbations.

With respect to Plaintiff's fibromyalgia, the ALJ determined that the evidence of record did not corroborate Plaintiff's allegations. The ALJ considered Plaintiff's condition in reference to Social Security Ruling (SSR) 12-2p, which states in order to find that an individual with a fibromyalgia condition is disabled, there must be sufficient objective medical evidence to support a finding that the claimant suffers from a medically determinable impairment that limits her functional abilities to the extent that it precludes her from performing any substantial gainful activity. Fibromyalgia is considered a medically determinable impairment only if the claimant provides evidence that an acceptable medical source diagnosed the claimant's fibromyalgia condition by means of either the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. These criteria are satisfied by documentation of either 11 of 18 positive tender points through digital palpitation, or a history of widespread pain with repeated manifestations of six or more fibromyalgia symptoms, including: fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety or irritable bowel syndrome. Here, the ALJ found that although Plaintiff's treatment records referenced a history of fibromyalgia, the record did not contain a specific tender point analysis or specific analysis of factors sufficient to satisfy the 1990 or the 2010 ACR criteria. The ALJ noted that although the entirety of the record did establish consistent pain complaints, the record also reflected a history of various medications, including narcotic pain and muscle relaxant medications. Thus, the ALJ concluded, that it appeared the prescription medication was based upon Plaintiff's subjective pain complaints. The ALJ also found that treatment records noted Plaintiff's medication controlled her fibromyalgia complaints.

The Court finds that the ALJ's determination that Plaintiff's allegations were not supported by the objective clinical findings erroneous for several reasons. Although the decision clearly shows documentation and citation to the record, throughout her analysis the

ALJ failed to make a comparison between Plaintiff's specific testimony and the medical evidence that the decision summarized. The ALJ selectively chose medical records that disfavored Plaintiff's complaints, and failed to explain why these records undermined Plaintiff's testimony. Other evidence in the voluminous record, and cited to by Plaintiff in her pleadings – which was disregarded by the ALJ – supports Plaintiff's claim.

Thus, the ALJ's finding that Plaintiff's testimony is inconsistent with the objective medical evidence is not supported by substantial evidence. The ALJ's reasoning contained selectively chosen evidence and did not fairly include consideration of the record as a whole. See, e.g., Garrison, 759 F.3d at 1018.

## 2. Activities of Daily Living

Next, the ALJ determined that Plaintiff's allegations regarding her physical and mental impairments do not interfere with her activities of daily living. An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). But, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Orn, 495 F.3d at 639 (emphasis added).

Here, after listing Plaintiff's ability to continue her hobbies of painting and playing computer games; ability to care for her son; manage finances and handle activities of personal care; ability to prepare meals and do laundry; and ability to walk, drive a car, and shop – the ALJ stated that "two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly,

even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition as it is managed by medication."

The Court finds that the ALJ erred in her finding. First, rather than explaining how Plaintiff's activities detract from Plaintiff's testimony, and providing an analysis of why Plaintiff's activities were inconsistent with the limitations asserted by Plaintiff, the ALJ simply dismisses her allegations in a conclusory fashion stating that her limited activities cannot be "verified." The ALJ fails to believe that Plaintiff is as limited as she alleges because her "condition" is "managed by medication." This is not sufficient. Further, the Court finds that the listing of activities and implying that said activities are performed consistently and regularly over an eight hour day is also insufficient. See Garrison, 759 F.3d at 1016.

### 3. Treatment and Inconsistent Statements in the Record

The ALJ gave two other reasons for rejecting Plaintiff's credibility finding that: (a) treatment modalities have been conservative, and (b) Plaintiff has made inconsistent statements.

With regard to treatment, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra, 481 F.3d at 751. Here, the ALJ states, "treatment modalities have been conservative and consisted of pain medication, depressive medication and injection therapy.... Claimant's medication usage has also been intermittent." In support, the ALJ cites one letter from Plaintiff stating that "she had not been feeling well; thus, she stopped taking her medication and felt a lot better." The ALJ also cites to a record stating "they were 'trying to get her off Percocet,'" and that Plaintiff has "reported improved pain with treatment." The ALJ then states, "[a]rguably, with claimant's alleged severity of pain and limitations, one would expect more significant findings on both the diagnostic imaging and exams as well as more complex treatment. Thus, the claimant's allegations regarding the severity of her symptoms and limitations are not consistent with her treatment history." The Court finds the ALJ's reasoning conflicting as the record as a whole reflects that Plaintiff's level of care was extensive and her treatment

overall consisting of surgery, injections, and narcotics was not conservative. Further, as Plaintiff notes, the Ninth Circuit has indicated that at least some of the treatment Plaintiff received for her physical impairments – injections – was not conservative. See Garrison, 759 F.3d at 1015 ("we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment").

As to inconsistent statements in the record, the ALJ found that Plaintiff "made inconsistent and unsupported statements," which detracted from her credibility. "In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering ... inconsistencies in claimant's testimony." Burch, 400 F.3d at 680. Here, the ALJ cites an example stating that Plaintiff "needed to lie down 2 to 3 hours each day due to pain; however, this is not documented within the record." The ALJ cites another example stating Plaintiff "also sought a rheumatology opinion; however, not for fibromyalgia treatment but rather because she had an attorney and was seeking disability benefits." The ALJ continued finding inconsistency in the fact that Plaintiff described herself as a "homemaker." The ALJ also found that Plaintiff's ability to work after the alleged onset date and Plaintiff's work history raised a question as to whether Plaintiff's continuing unemployment was due to medical impairments. The ALJ stated that there was no documentation supporting Plaintiff's inability to continue working at Krispy Kreme donuts due to pain complaints; and stated that while the treatment records document "some fatigue" and "mild depression," this contrasts with her testimony regarding the severity of her mental symptoms.

The Court finds that the ALJ's limited sample of inconsistencies is somewhat selective, and is not demonstrative of the record as a whole. The ALJ's isolated examples do not clearly or convincingly support the ALJ's conclusion that Plaintiff's testimony should be discounted.

In summary, the Court finds that the ALJ has failed to provide a sufficient basis to find Plaintiff's allegations not entirely credible. While perhaps any one of the individual factors identified by the ALJ in her decision could arguably detract from Plaintiff's

credibility, such factors viewed in isolation are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations as a whole. Thus, the Court concludes that the ALJ has failed to support her decision to discredit Plaintiff's credibility with specific, clear and convincing reasons and, therefore, the Court finds error.

## V. CONCLUSION

Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating physician, we credit that opinion as true. See Lester, 81 F.3d at 834. Similarly, where the ALJ improperly rejects a claimant's testimony regarding her limitations, and the claimant would be disabled if her testimony were credited, "we will not remand solely to allow the ALJ to make specific findings regarding that testimony." Id. An action should be remanded for an award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. See Garrison, 759 F.3d at 1020. Even where these conditions are met, the court may, nevertheless, exercise "flexibility" in applying the credit-as-true rule and remand for further proceedings where remand would permit the ALJ to make specific credibility findings or otherwise resolve inconsistencies in the record. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). However, the Ninth Circuit has made clear that remand simply to permit the ALJ to decide the same issue again is inappropriate. See Garrison, 759 F.3d at 1021-22.

The Court finds that a remand for an award of benefits is appropriate in this case. The record is extensive and complete, and the ALJ failed to identify clear and convincing reasons for rejecting Plaintiff's credibility and failed to identify specific and legitimate reasons based on substantial evidence in the record for rejecting Plaintiff's treating physician. Crediting as true the opinion of the treating physician as well as the credibility of Plaintiff, the ALJ would be required to find Plaintiff disabled on remand.

1   Therefore,

2   **IT IS ORDERED** that the final decision of the Commissioner is vacated and this case

3   is remanded for an award of benefits. The Clerk of Court shall enter judgment accordingly

4   and terminate this case.

5   DATED this 29th day of September, 2017.

6

7   _____

8   Michelle H. Burns
    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28